Jackson, *ex dem.* Smith, *against* Marsh.

Ejectment, tried at the *Cayuga* circuit, *March* 10*th*,
1825, before Throop, C. Judge ; when a verdict was ta-
ken for the plaintiff, subject to the opinion of the court.

*D. Cady*, for the plaintiff.

*B. F. Butler*, for the defendant.

*Curia, per* Woodworth, J.   The plaintiff gave in evi-
dence at the trial, a patent to the lessor of the plaintiff,
dated the 16*th* of *June*, 1823, for subdivision no. 2 ; be-
ginning at the *south east* corner of the survey 50 acres :
from thence giving certain courses and distances, and in-
cluding 135 acres.

The case states, that the action was brought to recover
subdivision no. 2, in lot no. 50, in the township of *Sem-*

A patent of lands, by the state, shall be presumed to have issued regularly ; and, if it be not void on its face, cannot be avoided collaterally, in a suit between individuals, unless it issued without au-thority, or against the prohibition of a statute.
Thus, where a patent issued in 1823, for lands which were occupied and improved, presumed, that the occupant

to the value of $25, on the 17*th* of *February*, 1809 ; *held*, that it should be
satisfactory proof was produced to the commissioners of the land office, that the occupant
had been satisfied for his improvements, previous to the date of the patent, pursuant to the
statute, (1 *R. L.* 296, 7, *s.* 17.)

A patent was granted of subdivision no. 2, beginning at the *south east* corner of the sur-
vey 50 acres ; and then giving courses and distances which would not include subdivision
no. 2, but the whole, or greater part of subdivision no. 4 ; whereas, had it begun at the
*north east* corner of the survey 50 acres, the same courses and distances would have inclu-
ded subdivision no. 2.   The subdivisions had, before the grant, been surveyed, and a map
made, and filed in the office of the surveyor general ; according to which, subdivision no. 2
began at the *north east* corner of the survey 50 acres, whence the courses and distances
mentioned in the patent, were laid down, and would include subdivision no. 2.   *Held*, that
the word " *south east*" should be rejected as surplusage, and that the location upon the map
should control.

If there are certain particulars sufficiently ascertained in the description of parcels, in a
patent or deed, which designate the thing intended to be granted, the addition of circum-
stances, false or mistaken, will not frustrate the grant.

*pronius;* and that the defendant was in possession. It appeared by a map and certificate of the surveyor general, admitted as evidence, that lot no. 50 had been subdivided into several lots, of which lot no. 2 was one; that the map had been filed in his office; and that subdivision no. 2, as represented on the map, was, on the 23d of *March*, 1818, sold to the lessor by the surveyor general, acting on behalf of the state.

By the act of 1813, concerning the commissioners of the land office, (1 *R. L.* 296, *s.* 17,) it is declared, that if any tract of land sold under the act, was occupied and improved on the 17th of *February*, 1809, to the value of $25, the occupant of such improvement shall be entitled to recover the value thereof from the purchaser; and the commissioners of the land office are inhibited from causing letters patent to be issued, until satisfactory proof be produced, that the purchaser has satisfied the occupant for his improvements.

In this case, it appears that a contract, under which the defendant claims, was given for 50 acres, being a part of subdivision no. 2; and that before *February* 17, 1809, 15 acres of the 50 were cleared, and 6 acres chopped, the value of such improvements exceeding $25.

The patent is evidence of the plaintiff's right, until set aside or vacated. The inhibition in the act is not against the issuing of any patent; but against issuing until satisfactory proof be produced, that the purchaser has satisfied the occupant. We are authorized to presume, *omnia solemniter acta*, that public officers, to whom the government committed important trusts, had discharged their duty faithfully; and received the necessary proof, before the patent issued. No evidence was offered that the requisite proof was not produced to the commissioners. The question is, therefore, not raised, whether an inquiry of this kind was admissible on the trial. But if the question had been presented, I think the doctrine contained in the case of *Jackson* v. *Lawton*, (10 *John.* 23,) decisive: "If the patent was issued by mistake, or upon false suggestion, it is voidable only; and unless letters patent are absolute-

ły void on the face of them ; or the issuing of them was without authority, or prohibited by statute, they can only be avoided in a regular course of pleading." And again : " When the defect arises on circumstances *dehors* the grant, the grant is voidable only by suit. It would be against precedent, and of dangerous consequence, to permit letters patent to be impeached collaterally."

The material question is, whether the letters patent include lot no. 2. There is an evident mistake in the boundaries. Lot no. 2 begins at the *north east* corner of the survey 50 acres. The description in the patent is, " Beginning at the *south east* corner."

If the map is rejected, as the counsel for the defendant contends, there is no difficulty in the case ; for then it would not appear there was any misdescription. It would be intended, that the boundaries in the patent were a correct description of no. 2. But the map, by agreement, forms part of the case. By that, it appears that lot no. 2 begins at the *north east* corner of the 50 acre survey. The residue of the boundaries correspond with the description in the patent. By beginning at the *south east* corner, lot no. 2 will not be included ; but the whole or greater part of lot no. 4. The location of no. 2 is equally certain, as the *south east* corner of survey 50 acres. Both are established by the production of the map. It is, therefore, doing no violence, to reject that part of the description, which commences at the *south east* corner, and give effect to another part, to which equal certainty is attached ; when it is manifest by so doing, full and fair effect is given to the intention of the parties. In truth, here is a direct contradiction. When the patent grants subdivision no. 2, it conveys that lot according to its real boundaries. By the map, it appears that the place of beginning is at the *north east* corner of the survey 50. From the patent, and the map taken together, it may be affirmed, that no. 2 begins at the *north east* corner. After this, follow the boundaries of no. 2, as described in the patent, which makes the place of beginning the *south east* corner. The rule to be applied is. " If there are certain particulars suf-

UTICA,
Aug. 1826.

Wilder
v.
Winne.

ficiently ascertained, which designate the thing intended to be granted, the addition of a circumstance, false or mistaken, will not frustrate the grant." (*Jackson* v. *Clark*, 7 *John.* 223.) From the principles adverted to, I think the place of beginning, as described in the patent, may be rejected as surplusage ; the description of the premises being sufficiently certain without those words. This was done in *Jackson* v. *Loomis*, (18 *John.* 81,) afterwards affirmed on error, (19 *John.* 449.) In the case of *Worthington* v. *Hylyer*, (4 *Mass. Rep.* 196,) the same doctrine is laid down by *Parsons*, C. J., who observed, that " If the description be sufficient to ascertain the estate intended to be conveyed, although the estate did not agree to some particulars in the description, yet it shall pass by the conveyance, that the intent of the parties may be effected."

My opinion is, that the plaintiff is entitled to judgment.

Judgment for the plaintiff.